UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARRYL SWAIN,

                 Petitioner,

       v.

MICHAEL J. ASTRUE,[1]
COMMISSIONER OF SOCIAL SECURITY,

            Respondent.

_____

**DECISION & ORDER**

12-CV-6233P

## **INTRODUCTION**

Petitioner Darryl Swain brings this action pursuant to the Social Security Act (codified in relevant parts at 42 U.S.C. §§ 405(g) and 1383(c)(3)) seeking review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Specifically, petitioner alleges that the decision of Administrative Law Judge ("ALJ") Rosanne M. Dummer denying his application for benefits was against the weight of substantial evidence contained in the record. Petitioner requests that the Court reverse the judgment of the Commissioner and remand for calculation of benefits or, alternatively, for further administrative proceedings.

The Commissioner moves for judgment on the pleadings on the grounds that the ALJ's decision was supported by substantial evidence in the record and was based upon the application of the correct legal standards. (Docket # 9). Petitioner cross-moves for judgment on

---

[1] After the commencement of this action, on February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.

the pleadings and opposes the Commissioner's motion on the grounds that the Commissioner's decision was not supported by substantial evidence.  (Docket # 11).  In the alternative, petitioner requests that the matter be remanded for further administrative proceedings.  (*Id.*).  For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## BACKGROUND

### I.      Procedural History

On April 7, 2009, petitioner filed an application for SSI, alleging disability beginning on December 15, 2007.  (Tr. 13).[2]  This claim was initially denied on May 26, 2009. (*Id.*).  Thereafter, petitioner timely filed a written request for a hearing on May 29, 2009.  (*Id.*). On August 4, 2010, the ALJ presided over a videoconference hearing from Baltimore, Maryland, and petitioner appeared and testified in Rochester, New York.  (*Id.*).

In a decision dated August 19, 2010, the ALJ found that petitioner was not disabled within the meaning of the Social Security Act.  (Tr. 13-25).  The Appeals Council denied review on March 1, 2012, rendering the ALJ's decision the final decision of the Commissioner.  (Tr. 1).  Petitioner subsequently filed this action on April 18, 2012.  (Docket # 1).

---

[2]  The administrative transcript shall be referred to as "Tr. __."

## II.   **Request for Development of the Record**

Approximately one month before the hearing, petitioner requested that the hearing be postponed so that he could obtain an intelligence evaluation.  (Tr. 141).  Petitioner's reason for the request was that he could not read or write, had only completed the ninth grade, and had taken special education classes.  (*Id.*).  In response, the ALJ took the request for an evaluation under advisement, but indicated that the hearing would proceed on the scheduled date.  (Tr. 182).

At the hearing, petitioner reiterated his request for an intellectual evaluation, citing a limited ability to read and do math and "generally a severe deficiency in intellectual functioning."  (Tr. 32, 57).  Counsel for petitioner explained that he had attempted to obtain petitioner's school records from the Rochester City School District, but was informed by the district that the records had been destroyed.  (Tr. 32-33).  Expressing doubts as to the accuracy of this information, counsel for petitioner requested that the ALJ leave the record open for two weeks following the hearing so that petitioner could re-contact the school district to obtain the records and submit them for consideration.  (Tr. 33, 58).  The ALJ granted that request.  (Tr. 58).

The ALJ deferred ruling on the request for an intellectual evaluation, determining to proceed with the hearing in order to determine whether the testimony would inform her decision as to whether an evaluation was warranted.  (Tr. 33, 57).  In her decision, the ALJ denied the request for an intellectual evaluation on the grounds that the record was sufficiently developed to permit her to render a full and fair determination.  (Tr. 13).

On August 19, 2010, the ALJ issued her decision finding that petitioner was not disabled.  On August 30, 2010, petitioner obtained the school records and at some point thereafter submitted them for consideration.  (Tr. 187).  The records appear to be from a school

in Alabama; thus, petitioner's earlier inability to obtain the records likely stemmed from counsel's mistaken understanding that petitioner had attended school in Rochester.  (Tr. 187-93).

The school records reflect that petitioner generally performed poorly in school, primarily receiving grades of C, D and F.  (Tr. 189).  Petitioner repeated the sixth grade and was placed into special education.[3]  (Tr. 189, 191).  Petitioner's grades do not appear to have improved during the seventh, eighth or ninth grade.  (Tr. 191-92).  In addition, the records reflect that petitioner scored an intelligence quotient ("IQ") of 73 on an Otis-Lennon intelligence test in 1973 and scored an IQ of 72 on a Wechsler Intelligence Scale for Children (WISC) intelligence test in 1975.  (Tr. 189-90).

The Appeals Council considered the school records and found that they did "not provide a basis for changing the [ALJ's] decision."  (Tr. 1, 2, 4).  The Appeals Council did not explain its reasoning in its notice denying review of the ALJ's decision.  (Tr. 1-4).

III.    **Work History**

At the time of the hearing, petitioner was 44 years old and had completed the ninth grade while attending special education classes.  (Tr. 33, 191).  He did not obtain a GED or driver's license.  (Tr. 32-33).  For about a year at the time of the hearing, petitioner swept, mopped, and cleaned bathrooms at a glass shop for five hours on Saturdays.  (Tr. 34, 149).  In 2009, petitioner worked at a car wash drying cars.  (Tr. 35, 173).  Prior to 2009, he performed

---

[3]  It is not clear from the records whether petitioner was placed in special education classes prior to the sixth grade, although some notations in the school records suggest that he was placed in special education as early as 1975.  (Tr. 190).

4

odd jobs such as temporary factory work, cutting grass, washing cars, and doing yard work.  (Tr.

35).


IV.   <u>**Medical History**</u>

Petitioner suffers from both physical and mental impairments.  With respect to

physical impairments, petitioner suffers from back pain, hypertension, and hypercholesterolemia.

(Tr. 253).  Petitioner also has had multiple fatty tumors, or lipomas, in his back and side.  (Tr.

36-37, 46).  One tumor was surgically removed in 2007 or 2008, after which petitioner

experienced burning and tingling in his lower back.  (Tr. 46).  Petitioner's body mass index

("BMI") shows he is borderline obese.  (Tr. 16, 33).  Petitioner also abuses tobacco.  (Tr. 253).

Bharat Gupta, M.D., has provided petitioner Vicodin for his back pain, Tekturna for his

hypertension, and Crestor for his hypercholesterolemia.  (Tr. 36-37, 254).  Petitioner broke his

ankle years ago, and it remains swollen.  (Tr. 36, 194).  Additionally, petitioner hurt his knee in a

bus accident, and medical records reflect moderate to mild pain in the knee.  (Tr. 209-12).

Petitioner testified that occasionally his leg goes "blank" or his side goes "limp."  (Tr. 37, 39).

He further alleges arthritis in both his knees and ankles.  (Tr. 152).  Petitioner testified that due

primarily to his chronic back pain, he has had trouble keeping jobs, sitting for a "period of time"

without standing up, standing for more than an hour and a half, and walking more than three or

four blocks.  (Tr. 35-36, 39).  He also struggles with bending, crawling, kneeling, and lifting

chairs at the glass shop.  (Tr. 47-48).

As for petitioner's mental impairments, petitioner testified that he becomes

anxious around strangers or crowds and sometimes has memory problems.  (Tr. 40).  However,

he has never received any counseling or therapy.  (*Id.*).  As noted above, school records obtained after the ALJ hearing show that he underwent intelligence testing at ages seven and nine, and his IQ was scored as 73 and 72, respectively.  (Tr. 32, 189-90).  Petitioner testified that he can only read small words and struggles to read his mail and the newspaper.  (Tr. 33-34, 45).  He can sign his name, but cannot write a paragraph and sometimes can follow stories on television for "a certain distance."  (Tr. 34, 40).  He can perform basic addition and subtraction, but struggles to help his seven-year-old granddaughter with homework dealing with fractions.  (Tr. 34, 45).  Petitioner also testified that he has trouble learning new things.  (Tr. 45-46).  Despite these intellectual limitations, petitioner is able occasionally to do laundry, shop, cook, and clean around the house.  (Tr. 42).  He is also able to work at the glass shop, take public transportation, attend an outpatient program at the Department of Social Services and play with his grandchildren.  (Tr. 33, 37-38, 42).

## V.    Non-Medical Evidence

The ALJ heard testimony from a vocational expert, David Festa, regarding jobs available for an individual with petitioner's capabilities.  (Tr. 50-57).  The ALJ asked Festa to make the following assumptions:  the individual can lift and carry twenty pounds occasionally and ten pounds frequently; he can sit six out of eight hours and stand or walk six out of eight hours; he must avoid concentrated exposure to dangerous machinery and unprotected heights; he cannot perform commercial driving; and he is limited to simple work involving one or two step tasks.  (Tr. 50-51).

Festa testified that the ALJ's hypothetical would allow for unskilled work at a light exertional level or sedentary level. (Tr. 51-52). Possible jobs at the light exertional level included: racker, DOT number 524.687-018, with 433,370 positions in the national economy and 16,590 positions in New York State; electrode cleaner, DOT number 720.687-014, with 433,370 positions in the national economy and 16,590 positions in New York State; and cleaner/housekeeper, DOT number 323.687-014, with 887,890 positions in the national economy and 47,940 positions in New York State. (*Id.*).

At the sedentary level, possible jobs included waxer, DOT number 779.687-038, with 433,370 positions in the national economy and 16,590 positions in New York State; lens inserter, DOT number 713.687-026, with 239,950 positions in the national economy and 4,020 in New York State; and preparer, DOT number 700.687-062, with 239,950 positions in the national economy and 4,020 in New York State. (Tr. 52).

Festa further testified that a worker could perform the given jobs even if he were functionally illiterate. (*Id.*). However, Festa indicated that the worker would not be able to perform the given jobs if he required frequent supervision or guidance by a supervisor (*e.g.*, the worker required re-teaching of the task every 30-60 minutes). (Tr. 56). Festa also indicated that the worker would not be able to perform the jobs if he was off task 25% of an average workday (*e.g.*, for extra supervision). (*Id.*).

Festa also testified that there would be no jobs that petitioner could perform if his testimony were credited and "supportable by the medical evidence and all the impairments [were] supported by the medical evidence." (Tr. 53).

7

## DISCUSSION

### I.       Jurisdiction and Scope of Review

Section 405(g) of Title 42 of the United States Code grants federal jurisdiction to hear claims based on the denial of Social Security benefits. *See Mathews v. Eldridge*, 424 U.S. 319, 327 (1976). In addition, Section 405(g) directs that the court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. *See Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Goldthrite v. Astrue*, 535 F. Supp. 2d 329, 333 (W.D.N.Y. 2008) (citing *Lynn v. Schweiker*, 565 F. Supp. 265, 267 (S.D. Tex. 1983)). Section 405(g) thus limits this Court's scope of review to two inquiries:  (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (review of the Commissioner's decision is not de novo and Commissioner's findings are conclusive if supported by substantial evidence).

Both parties move for judgment on the pleadings pursuant to 42 U.S.C. § 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Under Rule 12(c), judgment on the pleadings may be granted "where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). "[W]here the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d at 385.

## II.     The ALJ's Decision

In evaluating disability claims, the Commissioner is required to use the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not engaged in substantial gainful employment, the Commissioner must determine whether the claimant has a "severe impairment" that significantly limits his ability to work. Third, if the claimant does suffer a severe impairment, the Commissioner must determine whether it corresponds to one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education, or experience, and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work. If he is not, the fifth and final inquiry is whether the claimant can perform any work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. *Bush v. Shalala*, 94 F.3d 40, 44-45 (2d Cir. 1996).

Here, the ALJ followed the five step procedure.  Petitioner does not contest the Commissioner's findings regarding petitioner's physical impairments or his anxiety around crowds and strangers.  (*See* Docket # 11).  Petitioner only contests the Commissioner's findings relating to petitioner's intellectual limitations.  *Id.*

At step one, the ALJ found that petitioner's work at the glass shop for five hours on Saturdays did not rise to the level of substantial gainful employment.  (Tr. 15).  Thus, petitioner had not engaged in substantial gainful employment since April 7, 2009.  (*Id.*).

At step two, the ALJ found that petitioner suffered from back pain, multiple lipomas, hypertension, hypercholesterolemia, ankle pain due to past surgery, obesity, and a limited ability to read and write.  (Tr. 15-16).  The ALJ found these impairments to be severe.  (*Id.*).  The ALJ further found that petitioner's knee pain and anxiety around crowds and strangers were not severe.  (*Id.*).  The ALJ proceeded to step three with the severe impairments.  (*Id.*).

At step three, the ALJ found that none of petitioner's severe impairments were *per se* disabilities as described in Appendix 1, Subpart P, Regulation No. 4 of the Social Security Regulations.  (Tr. 16-18).  Regarding petitioner's back pain, there was no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis.  (Tr. 16); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  Petitioner's lipomas were benign tumors, and thus did not qualify as Malignant Neoplastic Diseases.  (Tr. 17); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 13.00.  Hypertension and hypercholesterolemia are both evaluated with respect to their negative effects on other parts of the body, and presumably because petitioner's hypertension and hypercholesterolemia were controlled and did not have such effects, the ALJ did not include them in her step three discussion.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00(H).  Petitioner's

ankle surgery did not cause an inability to ambulate effectively, so he did not meet the listing

relating to reconstructive surgery of a weight-bearing joint.  (Tr. 16); *see* 20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 1.03.  Finally, while obesity may enhance other impairments, the ALJ

determined that petitioner's obesity did not cause any of his other impairments to rise to the level

of a *per se* disability.  (Tr. 16); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(I).

      Also at step three, the ALJ found that petitioner did not meet the listings for

learning disorder, anxiety disorder, or substance abuse disorder.  (Tr. 17); *see* 20 C.F.R. Pt. 404,

Subpt. P, App. 1, §§ 12.02, 12.06, 12.09.  The ALJ observed that petitioner was able to perform

work around the house and socialize with his family.  (Tr. 17).  She further found that while

petitioner did express trouble with reading, writing, and doing math, petitioner was still capable

of understanding simple instructions and performing repetitive tasks for two-hour segments.

(*Id.*).  In addition, the ALJ determined that petitioner did not meet the description for mental

retardation because he exhibited no deficits in adaptive functioning before age twenty-two and

there were no intellectual test scores in the record that would establish mental retardation.  (Tr.

18); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

      At step four, the ALJ determined petitioner's residual functional capacity

("RFC").  (Tr. 18).  A claimant's RFC "is the most [he] can still do despite [his] limitations."  20

C.F.R. § 404.1545(a)(1).  The ALJ determined that petitioner could lift twenty pounds

occasionally and ten pounds frequently, sit six of eight hours, and stand and walk six of eight

hours.  (Tr. 18).  Thus, petitioner was capable of light work.  (Tr. 22).  The ALJ determined that

due to the side effects of petitioner's medications, petitioner must avoid work involving

concentrated exposure to hazardous moving machinery and unprotected heights.  (*Id.*).

Additionally, because petitioner did not have a driver's license, he could not perform commercial driving work. (*Id.*).

During her step four analysis, the ALJ noted her finding that petitioner's credibility as a witness was poor. (Tr. 20). She further found that "[w]hile [petitioner] alleged disabling problems with memory, cognitive limitations and problems with crowds, the evidence does not indicate that these are disabling conditions." (Tr. 22). Although she factored in petitioner's "limited education" in limiting him to "simple, unskilled work involving one to two step tasks," the ALJ found that further restrictions were not warranted based on, among other things, petitioner's "less than full credibility." (Tr. 22-23).

The ALJ determined that petitioner did not have past relevant work experience and moved to the fifth step of the analysis. (Tr. 23). At step five, the ALJ used petitioner's RFC, age, education, and work experience to determine whether there were jobs in the national economy that petitioner could perform. (*Id.*). The ALJ accepted the vocational expert's testimony that there were jobs available at both the light exertional level and sedentary level. (Tr. 24). The ALJ further accepted that these jobs would be available even if petitioner were functionally illiterate. (*Id.*). Although the vocational expert also testified that *no* jobs would be available if petitioner required frequent redirection or assistance due to intellectual limitations, the ALJ did not find credible petitioner's testimony of such intellectual impairment. (*Id.*).

The ALJ concluded her opinion by explaining why she denied petitioner's request for a consultative examination:

> [I] do[] not find these arguments [about intellectual limitations]
> persuasive, based on [petitioner's] presentation at the hearing, lack
> of credibility concerning allegations, no mention of any mental

> limitations or problems during any of Dr. Gupta's examinations or
> during his prior pleadings, the adaptive functioning of [petitioner]
> around his family, performing jobs for cash when he can find them,
> and the hypothetical posed to the vocational expert concerning
> illiteracy not affecting the identified jobs.

(Tr. 25).  Accordingly, the ALJ determined that petitioner's RFC did allow him to perform jobs

in the national economy, and the ALJ ultimately denied disability benefits.  (*Id.*).

### III.  <u>New Evidence Submitted to Appeals Council</u>

Petitioner does not contest the Commissioner's findings regarding his physical

impairments and anxiety around crowds and strangers, and the Court thus accepts those findings

and focuses on petitioner's intellectual impairments.  (*See* Docket # 11).  Petitioner maintains

that the ALJ improperly evaluated his mental capacity by failing to order an intelligence

examination.  (Docket # 11-1 at 7).  According to petitioner, this error potentially affected the

ALJ's determinations at steps three, four and five.  (*Id.* at 5-10).  Petitioner maintains that

intelligence tests from his childhood suggest that he may meet Listing 12.05, because the records

demonstrate a deficit of adaptive functioning before the age of twenty-two.  (*Id.*).  Had the ALJ

ordered the intelligence examination, according to petitioner, the results may have reflected that

petitioner's IQ is within the 60-70 range required by Listing 12.05.  (*Id.* at 7).  In any event,

according to petitioner, in the absence of a more developed record, the ALJ's mental RFC

assessment is not supported by substantial evidence.  (*Id.* at 8-9).  Next, petitioner argues that the

ALJ did not apply the appropriate legal standards when assessing his credibility.  (*Id.* at 9).

Finally, petitioner contends that the testimony of the vocational expert cannot provide substantial

evidence at step five because it was based upon an RFC that did not fully account for petitioner's mental limitations.  (*Id.* at 10-11).

Although not raised by petitioner, I conclude that the fundamental error with the Commissioner's determination stems from the failure of the Appeals Council to conduct a review of the ALJ's decision in light of the new evidence that petitioner submitted – specifically, his school records.

The regulations require the Appeals Council to consider "new and material" evidence "if it relates to the period on or before the date of the [ALJ's] hearing decision."  20 C.F.R. §§ 404.970(b), 416.1470(b); *see Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996).  The Appeals Council, after evaluating the entire record, including the newly-submitted evidence, must "then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of evidence currently of record."  20 C.F.R. §§ 404.970(b), 416.1470(b); *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010).  If "the Appeals Council denies review after considering new evidence, the [Commissioner's] final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence."  *Perez v. Chater*, 77 F.3d at 45 (internal quotation omitted).  The newly-submitted evidence then becomes part of the administrative record and subject to review.  *See id.*  "The role of the district court is to review whether the Appeals Council's action was in conformity with [the] regulations."  *Ahearn v. Astrue*, 2010 WL 653712, *4 (N.D.N.Y. 2010) (citing *Woodford v. Apfel*, 93 F. Supp. 2d 521, 528 (S.D.N.Y. 2000)).

To mandate consideration by the Appeals Council, the evidence must be both "(1) new and not 'merely cumulative of what is already in the record' and (2) material, meaning

'both relevant to the claimant's condition during the time period for which benefits were denied and probative.'" *Shields v. Astrue*, 2012 WL 1865505, *2 (E.D.N.Y. 2012) (quoting *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)).  To be material, there must be "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Jones v. Sullivan*, 949 F.2d at 60.  "If the Appeals Council fails to consider new, material evidence, 'the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence.'" *Ahearn v. Astrue*, 2010 WL 653712 at *4 (quoting *Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009)).

I find that the Appeals Council erred when it determined that petitioner's school records were insufficient to trigger review of the ALJ's decision.  Having reviewed the record, particularly the ALJ's determination, I conclude that there is a reasonable possibility that the school records would have affected the ALJ's decision.

I find that the school records constituted "new" evidence.  First, the record makes clear that despite counsel's attempts, he was unable to obtain petitioner's school records and in fact had been informed that the relevant records had been destroyed.  After the hearing, counsel apparently discovered that petitioner had attended school in Alabama.  Thus, despite attempts, petitioner was unable to obtain the records prior to the hearing.  Further, the records are clearly not cumulative because the record is devoid of any objective evidence of petitioner's mental limitations.  Indeed, the ALJ repeatedly relied upon the absence of objective evidence of petitioner's mental limitations, including the absence of any intelligence scores, at step three of her analysis.  (Tr. 16-18) ("[w]hile claimant may show some reduced abilities in [reading and learning new tasks], no objective evidence corroborates the allegations to the extent alleged"; in

15

addition "there is no evidence of deficits of adaptive functioning before age 22 . . . , nor the intellectual test scores required for the criteria Listing of 12.05").

With respect to materiality, the records lend substantial credence to petitioner's testimony that he suffers from mental limitations – testimony that the ALJ determined was not credible.  *See Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) ("[n]ot only did these [school records] provide documentation that the ALJ's decision was lacking and eliminate the ALJ's very reason for denying [petitioner's] claim, they also reinforced the credibility of [petitioner's] testimony").  In addition, and perhaps most importantly, the records are directly material to an analysis of Listing 12.05(C).

To meet the requirements of Listing 12.05(C) a claimant must demonstrate the following:

(1)     deficits in adaptive functioning initially manifested . . . before age 22;
(2)     [a] valid verbal, performance, or full scale IQ of 60 through 70; and,
(3)     a physical or other mental impairment imposing an additional significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05; *see Miller v. Astrue*, 2009 WL 2568571 (N.D.N.Y. 2009) (Listing 12.05(C) requires claimant to show:  "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) another severe physical or mental impairment").

The school records, particularly the intelligence scores, are directly material to the petitioner's disability determination because consideration of the records reasonably could have

affected the ALJ's analysis of whether petitioner met the criteria for Listing 12.05.  As an initial

matter, the school records are directly material to the first prong of this listing because they are

evidence that petitioner suffered a deficit prior to the age of twenty-two.  *Jackson v. Astrue*, 467

F. App'x at 218 ("information reflected in the school records is directly material to [establishing

a prong] of Listing 12.05C – the question of whether [claimant] suffered [a deficit prior to age

22]").

Despite the Commissioner's assertions to the contrary (Docket # 13 at 3), the fact

that the scores are slightly outside the permissible range does not render them inapposite because

"IQ scores between 71 and 75 can provide a basis for a determination of *equivalency* to Listing

12.05C."  *Johnson v. Barnhart*, 312 F. Supp. 2d 415, 426 (W.D.N.Y. 2003) (quoting Social

Security Administration's Program Operations Manual System ("POMS") § DI

24515.056(d)(1)(c), available at http://www.socialsecurity.gov/regulations/index.htm)).  Indeed,

the ALJ relied upon the absence of these or similar records when concluding that petitioner did

not meet the 12.05(C) listing.  (Tr. 18) ("[t]he "paragraph C" criteria of Listing 12.05 are not

indicated *as there is no evidence of deficits of adaptive functioning before age 22*) (emphasis

added).

Additionally, with respect to prong three, which requires "another severe physical

or mental impairment," the ALJ found that petitioner had numerous severe physical impairments

at step two of the analysis, including back pain, hypertension, and hypercholesterolemia.  *See*

*Muntzert v. Astrue*, 502 F. Supp. 2d 1148, 1152 (D. Kan. 2007) ("[i]f the claimant has an

additional physical or mental impairment(s) which is 'severe' at step two . . . , it will be

considered to impose an additional and significant work-related limitation of function in

accordance with Listing 12.05(C)) (citing 20 C.F.R., Part 404 Subpt. P, App'x 1 § 12.00 (A)).

Accordingly, all that would be left for petitioner to meet Listing 12.05(C) is a valid IQ score

between 60 and 70.

As petitioner concedes (Docket # 11-1 at 7 n.3), the intelligence scores contained

in his school records are too stale to establish that petitioner has met the second prong of the

listing.  *See Stutts v. Astrue*, 489 F. Supp. 2d 1291, 1293-94 (N.D. Ala. 2007) ("[b]ecause these

IQ scores were achieved before the plaintiff reached the age of 16, they are not deemed to be

valid as to the plaintiff's current level of intellectual functioning") (citing 20 C.F.R. Pt. 404,

Subpt. P, App'x 1 at § 112.00 D(10)).  Yet, petitioner's school records, including the intelligence

scores, are material to the second prong of the listing because, had they been submitted during

the hearing, they would have required the ALJ to order an intelligence exam to assess petitioner's

current intelligence level.  *See Johnston v. Comm'r of Soc. Sec.*, 2012 WL 1030462, *3, 6

(S.D. Ohio 2012) (ALJ failed to develop the record by not ordering intelligence test where school

records demonstrated claimant consistently performed poorly and where claimant testified that

she could not read or write well, could only perform simple math and performed limited

household chores including sweeping, assisting with laundry, cooking simple meals and

occasionally grocery shopping with her daughters; "a cursory review of [claimant's] school

records indicate a serious intellectual deficiency which the ALJ could not ignore"); *Stutts v.*

*Astrue*, 489 F. Supp. 2d at 1294-95 (ALJ failed to develop the record by not ordering an

intelligence exam where claimant's childhood school records reflected IQ scores of 72;

"standardized IQ testing was essential to a determination of whether the [claimant] meets Listing

12.05[;] . . . the action will be remanded for the administration of appropriate standardized

intelligence testing");  *Schwartz v. Halter*, 134 F. Supp. 2d 640, 646, 656-57 & n.18 (E.D. Pa.

2001) (ALJ erred in denying attorney's request for a consultative psychological examination

where claimant's school records reflecting poor performance "produced sufficient evidence to

put the ALJ on notice that he may have low intelligence"); *see also Laveck v. Astrue*, 2012 WL

4491110, *5-6 (N.D.N.Y. 2012) (ALJ failed to develop record by not ordering an intelligence

exam where claimant testified that she had poor school performance and where consultative

psychiatric exam suggested low average cognitive functioning; "there [was] scant medical

evidence with regard to [claimant's] cognitive abilities[;] . . . [in] the absence of any evidence

relating to this impairment, the ALJ should have ordered a consultative intelligence exam");

*Johnson v. Barnhart*, 312 F. Supp. 2d at 426 (remanding for ALJ to evaluate whether claimant

met Listing 12.05 where school records reflected an IQ of 72).

          In its notice of determination, despite specifically noting the additional evidence

submitted by petitioner, the Appeals Council provided absolutely no explanation for its

conclusion that the new evidence did not warrant review of the ALJ's decision.  (Tr. 1-4).  The

Appeals Council's unexplained, conclusory determination not to conduct a review of the ALJ's

decision is particularly troubling because the ALJ specifically relied upon the lack of any records

reflecting a childhood deficit at step three of her analysis.  *See Judge v. Comm'r of Soc. Sec.*,

2013 WL 785522, *7 (N.D.N.Y.) (remanding where Appeal Council failed to conduct review in

light of new evidence; "[t]he ALJ . . . supported his RFC assessment by pointing to the fact that

the record did not contain [a treating physician opinion] . . . [and] [claimant] then supplemented

the record by providing precisely the sort of evidence the ALJ found lacking"), *report and*

*recommendation adopted*, 2013 WL 785641 (N.D.N.Y. 2013); *Titus ex rel. N.M.C. v. Astrue*,

2010 WL 3323738, *7 (N.D.N.Y. 2010) ("[b]oth the ALJ and the Appeals Council have an affirmative obligation to develop the administrative record"), *report and recommendation adopted*, 2010 WL 3323744 (N.D.N.Y. 2010).

        In sum, the school records were clearly new and material evidence that reasonably could have altered the ALJ's assessment of whether petitioner established the criteria of Listing 12.05(C) at step three and possibly the rest of the sequential disability evaluation.  At a minimum, the school records likely should have prompted the ALJ to order an intelligence examination.  Under such circumstances, the Appeals Council's failure to review the ALJ's determination in light of the new evidence constitutes error warranting a remand for consideration of the new evidence.  *See Jackson*, 467 F. App'x at 218 (remanding where claimant submitted school records to Appeals Council indicating a childhood IQ score of 67; "[w]e cannot say that substantial evidence supports the finding that [claimant] failed to establish [first prong of 12.05(C)] where new and material evidence submitted to the Appeals Council contradicts both the ALJ's findings and underlying reasoning, and the Appeals Council failed to provide any reason for disregarding this additional evidence"); *Sims v. Astrue*, 2010 WL 2985818, *6 (N.D. Miss. 2010) ("[b]ecause the ALJ did not have an opportunity to consider the later-obtained IQ scores and [physician's] evaluation of [claimant's] capabilities, and because his analysis could be altered in light of that evidence, the evidence is 'material' and the case should be remanded to the ALJ for further consideration of whether [claimant] meets . . . Listing [12.05(C)]").  As in *Jackson*, a review of the record before the Court, which now includes petitioner's school records, does not permit a conclusion that substantial evidence supports a finding that petitioner does not meet the requirements of Listing 12.05(C).

IV.   **Remand**

       "Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the cause for a rehearing.'"  *Butts*, 388 F.3d at 385 (quoting 42 U.S.C. § 405 (g)).  Where the Appeals Council has erred in failing to conduct a review in light of new, material evidence, the matter should be remanded to the ALJ for further consideration pursuant to sentence four of Section 405(g).  *See Sears v. Colvin*, 2013 WL 6506496, *4 (N.D.N.Y. 2013) (sentence four as opposed to sentence six remand was appropriate because evidence submitted to Appeals Council is not "'newly acquired evidence' as contemplated by sentence six"); *see Titus ex rel. N.M.C.*, 2010 WL 3323738 at *5 (collecting cases).  Accordingly, I conclude that a remand pursuant to sentence four of 42 U.S.C. § 405(g) is appropriate.  On remand, the Commissioner should obtain valid IQ scores for petitioner and obtain a consultative psychological evaluation to assess petitioner's mental capabilities.  *Johnston v. Comm'r of Soc. Sec.*, 2012 WL 1030462 at *9 (directing Commissioner on remand to obtain valid IQ scores and supplemental psychological evaluation).

**CONCLUSION**

       For the reasons stated above, Commissioner's motion for judgment on the pleadings **(Docket # 9)** is **DENIED** and petitioner's motion for judgment on the pleadings

**(Docket # 11)** is **GRANTED in Part and DENIED in Part**.  This matter is remanded to the

Commissioner for further administrative proceedings consistent with this decision.


**IT IS SO ORDERED.**


                                                              *s/Marian W. Payson*
                                                          MARIAN W. PAYSON
                                                       United States Magistrate Judge

Dated:  Rochester, New York
             March    31   , 2014

22